1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17

| | |
|---|---|
| JANET KAREN WORSHAM,<br><br>                    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                    Defendant. | Case No.:  15cv55-WQH-MDD<br><br>**REPORT AND RECOMMENDATION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF No. 12] and DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF No. 11]** |

18
19
20
21
22
23
24
25
26

Plaintiff Janet Karen Worsham ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for disability and disability insurance benefits under Title II of the Social Security Act.  Plaintiff moves the Court for summary judgment reversing the Commissioner and ordering an award of benefits (ECF No. 11).  Defendant has moved for summary judgment affirming the denial of benefits.  (ECF No. 12).

For the reasons expressed herein, the Court recommends that Plaintiff's motion for summary judgment be **DENIED** and Defendant's

1

motion for summary judgment be **GRANTED**.

**Background**

## I.    Factual Background

Plaintiff alleges that she became disabled on May 1, 2006, due to several medical conditions, including bilateral carpel tunnel syndrome, spondylolisthesis, and fibromyalgia.  (A.R. at 22-23).  Plaintiff's allegation of depression and anxiety was determined nonsevere by the ALJ because she experienced no more than minimal limitations on her ability to perform basic mental work activities. (A.R. at 23).  Plaintiff's date of birth of June 28, 1960, categorizes her as an individual defined as closely approaching advanced age at the time of filing.

## II.   Procedural History

On October 5, 2010, Plaintiff protectively filed for supplemental social security disability insurance benefits under Title II of the Social Security Act. (A.R. at 20).  Her claim was denied initially on January 1, 2011, and denied upon reconsideration on June 2, 2011. (*Id.*).  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and a hearing was held February 21, 2013, before ALJ Robert Iafe (A.R. at 29).  Plaintiff appeared and was represented by counsel. (*Id.*). Plaintiff, impartial vocational expert Gloria J. Lasoff, and impartial medical expert Robert S. Karsh, M.D. testified at the hearing. (A.R. at 20).

On May 31, 2013, the ALJ issued a written decision finding Plaintiff not disabled.  (A.R. at 20-29).  Plaintiff appealed and the Appeals Council denied Plaintiff's request to review the ALJ's decision. (A.R. at 1-3). Consequently, the ALJ's decision became the final decision of the Commissioner.

2

1    On January 12, 2015, Plaintiff filed a Complaint with this Court

2    seeking judicial review of the Commissioner's decision.  (ECF No. 1).  On

3    April 3, 2015, Defendant answered and lodged the administrative record

4    with the Court.  (ECF Nos. 7, 8).  On May 6, 2015, Plaintiff moved for

5    summary judgment. (ECF No. 11).  On June 5, 2015, the Commissioner

6    cross-moved for summary judgment and responded in opposition to

7    Plaintiff's motion. (ECF Nos. 12).  Plaintiff did not file a Reply to

8    Defendant's cross-motion for summary judgment.

**Discussion**

## I.    Legal Standard

11   The supplemental security income program provides benefits to

12   disabled persons without substantial resources and little income.  42 U.S.C.

13   § 1383.  To qualify, a claimant must establish an inability to engage in

14   "substantial gainful activity" because of a "medically determinable physical

15   or mental impairment" that "has lasted or can be expected to last for a

16   continuous period of not less than 12 months."  42 U.S.C. § 1382(a)(3)(A).

17   The disabling impairment must be so severe that, considering age,

18   education, and work experience, the claimant cannot engage in any kind of

19   substantial gainful work that exists in the national economy.  42 U.S.C. §

20   1382(a)(3)(B).

21   The Commissioner makes this assessment through a process of up to

22   five-steps.  First, the claimant must not be engaged in substantial, gainful

23   activity.  20 C.F.R. § 416.920(b).  Second, the claimant must have a "severe"

24   impairment.  20 C.F.R. § 416.920(c).  Third, the medical evidence of the

25   claimant's impairment is compared to a list of impairments that are

26   presumed severe enough to preclude work.  20 C.F.R. § 416.920(d).  If the

claimant's impairment meets or is equivalent to the requirements for one of the listed impairments, benefits are awarded.  20 C.F.R. § 416.920(d).  If the claimant's impairment does not meet or is not equivalent to the requirements of a listed impairment, the analysis continues to a fourth and possibly fifth step and considers the claimant's residual functional capacity. At the fourth step, the claimant's relevant work history is considered along with the claimant's residual functional capacity.  If the claimant can perform the claimant's past relevant work, benefits are denied.  20 C.F.R. § 416.920(e).  At the fifth step, reached if the claimant is found not able to perform the claimant's past relevant work, the issue is whether claimant can perform any other work that exists in the national economy, considering the claimant's age, education, work experience, and residual functional capacity.  If claimant cannot do other work that exists in the national economy, benefits are awarded.  20 C.F.R. § 416.920(f).

Section 1383(c)(3) of the Social Security Act, through Section 405(g) of the Act, allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner.  42 U.S.C. §§ 1383(c)(3), 405(g).  The scope of judicial review is limited, however, and the Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error." *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988) (quoting *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)).

Substantial evidence means "more than a mere scintilla" but less than a preponderance.  *Sandqathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quoting *Andrews v. Shalala*, 53 F.3d

1035, 1039 (9th Cir. 1995)).  The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions.  *Desrosiers v. Secretary of Health & Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision.  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary."  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

The ALJ has a special duty in social security cases to fully and fairly develop the record in order to make an informed decision on a claimant's entitlement to disability benefits.  *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).  Because disability hearings are not adversarial in nature, the ALJ must "inform himself about the facts relevant to his decision," even if the claimant is represented by counsel.  *Id.* (quoting *Heckler v. Campbell*, 461 U.S. 458, 471 n.1 (1983)).

Even if a reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision.  *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978).  Section 405(g) permits a court to enter a judgment affirming, modifying or reversing the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court may also remand the matter to the Social Security Administration for further proceedings.  *Id.*

## II.  The ALJ's Decision

The ALJ concluded that Plaintiff was not disabled, as defined in the

Social Security Act, from October 5, 2010, through the date of the ALJ's decision of May 13, 2013, pursuant to §§ 216(1) and 223(d) of the Social Security Act. (A.R. at 29).  The ALJ found Plaintiff did not have an impairment or combination of impairments that meets or is medically equivalent to the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526). (A.R. at 24).  Specifically, the ALJ found that Plaintiff's medically determinable mental impairment of depression and anxiety "did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities. (A.R. at 23).  The ALJ found Plaintiff had only mild restriction in activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace as to detailed or complex tasks, and no episodes of decompensation of extended duration. (*Id.*).

In addition, the ALJ found Plaintiff had bilateral carpel tunnel syndrome with no finding of any motor function impairment.  (A.R. at 25). The ALJ also found that Plaintiff had spondylothesis/osteoarthritis but showed no evidence of nerve root compression, motor problems, atrophy, muscle weakness, or straight leg raising. (*Id.*).  The ALJ noted that Plaintiff had full range of motion of the hips with only one reported examination finding decreased lumber flexion.  The ALJ also noted Plaintiff had been diagnosed with fibromyalgia and prescribed medication.  Based on these limitations, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (*Id.*).

Citing to the testimony of the vocational expert, the ALJ found that

15cv55-WQH-MDD

Plaintiff could perform past work, and therefore did not meet the final step of the evaluation process.  The ALJ also found Plaintiff could perform other jobs available in both the local and national economy.  (A.R. at 28). The ALJ specifically noted the following medical history to be of particular relevance:

2001:  Plaintiff's nerve conduction test in August showed some sensation in impairment but the medical expert testified that there was no evidence of functional impairment.  (A.R. at 26, 608-610).

2001, 2005, and 2007 MRI results: Plaintiff's 2001 MRI showed no nerve root impingement, thecal sac compression, or spinal stenosis. (A.R. at 611-616).  Plaintiff's 2005 MRI showed only minimal bulges in the lumbar spine without significant protrusion or stenosis. (*Id.*).  Plaintiff's 2007 MRI showed no nerve root compression, no motor problems, atrophy, muscle weakness or straight leg raising issues.  Her hips had full range of motion on examination but some decreased lumbar flexion was reported at one examination.  (*Id.*).

2011:  Plaintiff underwent a complete psychiatric evaluation by Dr. Glassman, M.D., a board certified psychiatrist. (A.R. at 555-572).  Dr. Glassman reported that Plaintiff "suffers from a pain disorder with medical and psychological factors, generalized anxiety disorder, borderline personality features and has a GAF of 70." [1]  Dr. Glassman noted that Plaintiff appeared clean, neat and well groomed. She had a "well put

_____

[1] A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n. 2 (9th Cir. 1998).  According to the DSM-IV, a GAF score between 61 and 70 describes "mild symptoms. . .but generally functioning pretty well. . . ." DSM-IV-TR, p.34.

together" physical presentation. She was well engaged and maintained good eye contact and showed mild to moderate anxiety, but did not present as sad or depressed. (A.R. at 27, 558).  Dr. Glassman opined that Plaintiff appeared to have above average intellectual functioning and her thought processes were coherent, relevant and goal directed.  (A.R. at 559).  According to Dr. Glassman, Plaintiff told him that she had worked throughout 2010 looking for real estate deals. (A.R. at 557).

The ALJ also considered the testimony of vocational expert, Gloria Lasoff, (VE).  Based upon the vocational profile and hypotheticals provided by the ALJ at that time, VE Lasoff testified that the title and characteristics of Plaintiff's past employment translated to positions of sales representative and financial services, also sales agent real estate. (A.R. at 79).  These positions involve a light level of exertion, ability to stand and walk for about six out of an eight hour day, sitting for about six out of an eight hour day, with normal breaks, never climbing ladders, ropes, or scaffolding.

The VE further testified, that if the ability to stand and walk was limited to four out of eight hours, and sit for six out of eight hours, and move to limiting work to simple tasks with frequent but not constant interaction with others, her prior employment would be precluded but she would be able to perform other work in the national/local economy. (A.R. at 80).  For example, VE Lasoff testified that with the additional restrictions as noted above Plaintiff could perform the work of garment folder, 789.687-066, storage facility rental clerk, 295.367-026, or production worker, 706.687-010.  (A.R. at 80).  Lastly, the ALJ posited the additional restriction to the second hypothetical of a change in mental "skill" where the worker

would be off task for 15 minutes per hour.  VE Lasoff testified that, as described, that person would be unable to sustain full time employment. (A.R. at 81).

During the Administrative Hearing, Plaintiff testified she works only on a part time basis as a realtor.  She takes referrals and works at her own pace and rest[s] in between. (A.R. at 40).  Plaintiff testified she has back pain, fatigue, anxiety and carpel tunnel in both wrists.  (*Id.*).  According to Plaintiff's testimony, she could not sit for more than 15-20 minutes because of pain in her hips and her feet go numb.  Her back sometimes felt like "it's broken," "like separated from [her] spine," she has a really bad bunion on her right foot and sometimes "can't hardly walk. . . ." (A.R. at 49).  Plaintiff also testified that if she is working on something for a while and gets uncomfortable she "gets up to stretch, walk…go back and forth to the desk and walk around, do something standing up" and eventually gets it done. (A.R. at 51-52).   The ALJ considered and found not credible Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms to the extent they conflict with the residual functional capacity assessment as found by the ALJ.  (A.R. at 25 -28).

## III.   Plaintiff's Argument in Support of Summary Judgment

Plaintiff contends that the ALJ improperly discredited her testimony about symptoms and pain.  (ECF No. 11).  According to Plaintiff, the pain and physical limitations she experiences as a result of her physical and mental impairments were sufficiently proven by the evidence presented to be severe.  The underlying argument put forth by Plaintiff to support her allegation of error is that "[t]he ALJ's credibility determination is indicative of an extreme lack of medical understanding of the debilitating effects of

15cv55-WQH-MDD

fibromyalgia." (P. at ECF 11, pg. 6, citing *Reddick v. Chater*, 157 F.3d 715, 721, 723 (9th Cir. 1998)). Plaintiff further contends that the ALJ failed to "properly analyze" her case under Social Security Ruling 12-2p.[2]

Defendant contends "no matter how sincere or genuine Plaintiff's subjective complaints, the complaints must be reasonable in relation to the objective medical evidence." (ECF No. 12 at pg. 3). Defendant also contends that the ALJ had an opportunity to observe Plaintiff's demeanor at the hearing and "[w]hile not a deciding factor, demeanor is still some evidence of Plaintiff's ability to function." (*Id.* at pg. 8, citing *Fanale v. Astrue*, 322 F. App'x 566, 567 (9th Cir. 2009) (claimant's demeanor at the hearing amounts to clear and convincing reasons for discrediting her subjective complaint). According to Defendant, "[t]he ALJ's credibility determination was sufficiently specific to show the court that the ALJ did not arbitrarily disregard Plaintiff's subjective complaints." (*Id.*)

Social Security Ruling 12-2p explains that "as with any claim. . .we use a 5-step sequential evaluation process to determine whether an adult with an MDI (medically determinable impairment) of FM (fibromyalgia) is disabled." (*Id.* at 5). As noted herein, the ALJ found Plaintiff had the following severe impairments: bilateral carpal tunnel syndrome, spondylolisthesis, and fibromyalgia. (A.R. at 23). SSR 12-2p provides that at step 2, a fibromyalgia impairment will be considered severe if it causes a limitation or restriction that has more than a minimal effect on the ability

---

[2] The Social Security Administration issues rulings that interpret Social Security statutes and regulations. *Paulson v. Bowen*, 836 F.2d 1249, 1252 n 2 (9th Cir. 1988). Although the rulings do not have the force of law, courts defer to them unless they are plainly erroneous or inconsistent with the Social Security Act or regulations. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

1   to perform basic work activities. Further, SSR 12-2p explains that at step 3

2   "because FM is not a listed impairment" a disability finding cannot rest

3   solely on Plaintiff's fibromyalgia impairment. (*Id.* at 6). Thus, the ALJ must

4   determine whether Plaintiff's fibromyalgia "medically equals a listing (*e.g.*

5   inflammatory arthritis) or whether it medically equals a listing in

6   combination with at least one other medically determinable impairment."

7   (*Id.*).

8        As noted herein, the ALJ found Plaintiff had the following severe

9   impairments: bilateral carpal tunnel syndrome, spondylolisthesis, and

10  fibromyalgia. (A.R. at 23).  Thus, the ALJ made his step 2 finding.  At step

11  3, the ALJ found that Plaintiff "did not have an impairment or combination

12  of impairments that met or medically equaled the severity of one of the

13  listed impairments." (A.R. at 24).  Therefore, based on the record presented,

14  the ALJ considered Plaintiff's claim of fibromyalgia within the sequential

15  evaluation process as discussed in SSR 12-2p.  The ALJ then went on to

16  address Plaintiff's credibility regarding her subjective pain/symptoms

17  pursuant to the two-step analysis in accordance with the applicable

18  authority.

19       An ALJ is not "required to believe every allegation of disabling pain"

20  or other impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

21  "[Q]uestions of credibility and resolution of conflicts in the testimony are

22  functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642

23  (9th Cir. 1982). The factors that an ALJ may consider in deciding whether

24  to reject a claimant's testimony are specified in the Social Security

25  Administration rules. *Orn v. Astrue*, 495 F.3d 625, 635-37 (9th Cir. 2007).

26  Those reasons include "reputation for truthfulness, inconsistencies in the

testimony or between testimony and conduct, daily activities, and unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment." *Id.* at 636 (citing *Fair*, 885 F.2d at 603). However, the reasons provided by the ALJ must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit a claimant's testimony. *Thomas v. Barnhart*, 278, F3d 947, 958 (9th Cir. 2002). To meet this burden, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The first step requires the ALJ to determine whether Plaintiff has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028 1036 (9th Cir. 2007). If the ALJ determines that Plaintiff meets the first step and there is no evidence of malingering, the ALJ can only then reject Plaintiff's testimony by offering "clear and convincing reasons to reject a claimant's subjective testimony, by specifically identifying "what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

In this case, the ALJ cited to the objective medical evidence in the record; Plaintiff's daily activities; evidence regarding Plaintiff's medical treatment; and inconsistencies in Plaintiff's testimony.

1)   Objective Medical Evidence

Where the ALJ has found that medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ may not reject a claimant's statements regarding the intensity or severity of pain or its effect on the ability to work solely because it is not supported by the objective medical evidence. 20 C.F.R. § 404.1529(c)(2). "The ALJ must

1    specifically identify what evidence undermines the claimant's complaints"

2    *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).

3          Here, the ALJ found Plaintiff had the severe impairments of 1)

4    bilateral carpal tunnel syndrome; 2) spondylolisthesis; and 3) fibromyalgia.

5    (A.R. at 23). The ALJ considered the evidence of Plaintiff's medical history

6    and physical limitations, but found the evidence insufficient to adequately

7    support Plaintiff's claims of disabling pain to the degree alleged. (A.R. at

8    25).  The ALJ provided several clear and convincing reasons for rejecting

9    Plaintiff's allegations as not credible.  Although Plaintiff testified she had

10   disabling carpel tunnel syndrome with impaired motor function, the ALJ

11   noted that even though the nerve conduction test of August 22, 2001,

12   revealed some impairment, Dr. Robert Karsh, M.D., the medical expert,

13   testified that there was no evidence in the medical record of functional

14   impairment. (A.R. at 26).  Indeed, Dr. Karsh specifically stated "[n]obody

15   has found impaired motor function."  (A.R. at 25, 45).

16         Regarding Plaintiff's allegations of disabling back pain, the ALJ relied

17   on the testimony of Dr. Karsh, who stated at Plaintiff's hearing that her

18   medical records did not show any root impingement or thecal sac

19   compression, nor central spinal stenosis or root endema. (A.R. at 612).  The

20   2005 MRI of Plaintiff's lumbar spine showed normal height of the lumbar

21   vertebral bodies, mild circumferential bulges, no significant protrusion or

22   stenosis.  (A.R. at 26, 616).  The ALJ concluded that both the 2001 and 2005

23   MRI of Plaintiff's back showed no or only minimal abnormalities.  (*Id.*).

24   Here, the ALJ did not rely on the lack of medical evidence alone to discredit

25   Plaintiff's statements, therefore, it was not error for the ALJ to consider it

26   along with other clearly stated reasons.

2) Daily Activities

The Social Security regulations explicitly instruct an ALJ to evaluate the claimant's daily activities when determining the claimant's credibility. 20 C.F.R. § 404.1529(c)(3)(I); Social Security Ruling 96-7p, (SSA July 2, 1996).  An ALJ is permitted to use "ordinary techniques of credibility evaluation" such as inconsistent prior statements when determining credibility. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Consistency is "[o]ne strong indication of the credibility of an individual's statements. . . ." Social Sec. Ruling, 96-7p, (SSA July 2, 1996).

Reviewing the evidence, the ALJ found the Plaintiff's relatively intact self-reported daily activities appeared to demonstrate greater functional capacity than Plaintiff alleged. (A.R. at 26-27).  For example, Plaintiff reported she works at home or her employer's home and stays for several hours.  She is able to drive herself there and she also is able to drive her daughter to school.  (A.R. at 26).  Plaintiff reported she cooks simple meals and performs household chores. (*Id.*).  In contrast, at the review hearing, Plaintiff testified she has a lot of back pain, fatigue, anxiety, "both wrists have carpal tunnel and go numb a lot . . . . . just from sitting and writing even a note at Christmas time. . . ." (A.R. at 43).  According to Plaintiff, "oftentimes" when she wakes up in the morning her back feels like it's broken. (A.R. at 49).

It is well settled that "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (internal citations omitted).  An ALJ may, however, discredit a claimant's testimony when the claimant reports participation in everyday activities indicating

capacities that are transferable to a work setting.  *See Morgan v. Cmm'r Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999); *Fair*, 885 F.2d at 603. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F. 3d 685, 693 (9th Cir. 2009).  After considering the relevant evidence in the record, the ALJ found insufficient support for the level of limitations alleged by the Plaintiff.  (A.R. at 27). Consequently, the ALJ's rejection of Plaintiff's allegations of disabling physical limitations was not error.

3) Medical Treatment

Evidence that a claimant only received conservative treatment is a valid ground for questioning claimant's statements regarding severity of pain or symptoms.  *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). Additionally, the ALJ is permitted to consider the effectiveness of medication in treating Plaintiff's symptoms.  Social Security Ruling 88-13. Here, the ALJ noted that Plaintiff has not undergone any surgery for her carpel tunnel syndrome "and she did not testify that any surgery was planned." (A.R. at 25).  The ALJ also noted that Plaintiff was "not taking the type of pain medication associated with severe, disabling pain." (*Id.*).

The ALJ also addressed Plaintiff's claims of mental impairment, which he found "did not cause more than a minimal limitation in [her] ability to perform basic mental work activities and was therefore nonsevere." (A.R. at 23).  Specifically, the ALJ cited to  Plaintiff's psychiatric evaluation performed in 2001 by Dr. Jaga Glassman, M.D., a board certified psychiatrist,  who found that Plaintiff is depressed and

1   anxious but not pervasively depressed, sad or dysphoric (A.R. at 26, 556).

2   Dr. Glassman reported that Plaintiff was well put together, engaging, polite

3   and respectful in attitude and demeanor. (A.R. at 26, 558).  Dr. Glassman

4   noted that Plaintiff ambulated without difficulty and sat through the

5   interview without obvious pain.  Dr. Glassman assessed her GAF at 70,

6   with mild impairment in her capacity to maintain concentration,

7   persistence and pace due to anxiety.  (A.R. at 26, 559).  Dr. Glassman

8   speculated that with psychiatric/mental health treatment she could see

9   improvement of symptoms. (*Id*.).

10       As noted herein, the ALJ has identified several contradictions between

11   Plaintiff's claims of disability and the medical evidence presented in the

12   record.  *Sample v. Schweiker*, 694 F.2d at 642 ("In reaching his findings, the

13   administrative law judge is entitled to draw inferences logically flowing

14   from the evidence.").  The ALJ's citations to the record represent clear and

15   convincing reasons for finding Plaintiff less than credible regarding her

16   functional limitations.

17       The ALJ also considered Plaintiff's husband's third party adult

18   functioning report of January 2, 2011.  An ALJ may consider third party

19   statements as evidence regarding the severity of Plaintiff's impairment. See

20   20 C.F.R. § 416.913.  "If the ALJ wishes to discount the testimony of the lay

21   witnesses, he must give reasons that are germane to each witness." *Dodrill*

22   *v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *Bruce v. Astrue*, 557 F3d 1113

23   (9th Cir. 2009).  Here, the ALJ considered the third party adult function

24   report from Herbert Worsham, III (Plaintiff's husband) and opined Mr.

25   Worsham's report was understandably "biased in the [Plaintiff's] behalf."

26   (A.R. at 27, 291).  Thus, the ALJ accorded less weight to Mr. Worsham's

report than the weight given to the reports of the medical expert and consultative examiner.  (*Id.*).

As Plaintiff points out "[i]n evaluating [Plaintiff's] complaints of limitation, the ALJ and this Court are obligated to consider the testimony not in a vacuum but in consideration of the record has a whole." (ECF No. 11 at 5).  Here, the ALJ has made specific findings justifying his decision to disbelieve an allegation of excess pain.  The ALJ discussed the evidence and provided clear and convincing reasons upon which his adverse determination of Plaintiff's credibility was based.  *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).  "Credibility determinations are the province of the ALJ" and are entitled to deference if sufficiently supported by the record.  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (citing *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988)).  "Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision." *Id.*

## IV.   Substantial Evidence Supports the ALJ's Decision

A review of the record presented, demonstrates that substantial evidence supports the ALJ's decision finding Plaintiff not disabled with the residual functional capacity to perform her past relevant work as a real estate sales agent. (A.R. at 28).  In this case, the ALJ relied on the opinion of Dr. Karsh, M.D., the testifying medical expert, who testified that Plaintiff's medical record repeatedly found Plaintiff in no apparent distress with her physical status unremarkable. (A.R. at 46-47).  Likewise the consultative examiner's report prepared by Dr. Glassman, M.D., the

examining psychiatrist, was given great weight by the ALJ.  According to the ALJ "[t]his doctor's report is specific, detailed, and persuasive and the conclusions are based on the objective findings." (A.R. at 27).  With the exception of Plaintiff's own allegations, all opinion evidence in the record supports the ALJ's decision.

The ALJ clearly relied on the findings of the treatment record and reports cited in the administrative record.  The ALJ's findings are consistent with the record as a whole.  Title 20 C.F.R. § 416.920b states "after the [ALJ] review[s] all of the evidence relevant to your claim, including medical opinions [the ALJ] make[s] findings about what the evidence shows." (*Id.*).  Further, Title 20 C.F.R. § 416.927(6)(d)(1) states in part, "[the ALJ is] responsible for making the determination or decision about whether [a claimant] meet[s] the statutory definition of disability."

The court's review revealed no ambiguity or error indicating that the ALJ's decision was based on less than substantial evidence.  42 U.S.C. § 405(g).  Accordingly, the court finds the ALJ's findings of fact and conclusions of law, including Plaintiff's residual functional capacity, is supported by substantial evidence and free of legal error. For these reasons, it is recommended Plaintiff's motion for summary judgment on her claim that the ALJ committed error for failing to fully credit her allegations of disabling limitations be **DENIED** and the Commissioner's motion for summary judgment be **GRANTED**.

## Conclusion

For the reasons set forth above, and in consideration of the record as a whole, it is recommended that Plaintiff's motion for summary judgment be denied and that Defendant's cross-motion for summary judgment be

1  granted and the ALJ's decision be upheld.

2      This report and recommendation of the undersigned Magistrate Judge

3  is submitted to the United States District Judge assigned to the case,

4  pursuant to the provisions of 28 U.S.C. § 636(b)(1).

5      IT IS HEREBY ORDERED that any written objections to this Report

6  must be filed with the Court and served on all parties no later than January

7  26, 2016.  The document should be captioned "Objections to the Report and

8  Recommendation."

9      IT IS FURTHER ORDERED that any reply to the objections shall be

10  filed with the Court and served on all parties no later than February 2,

11  2016. The parties are advised that failure to file objections within the

12  specified time may waive the right to raise those objections on appeal of the

13  Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

14  Dated:  **January 12, 2016**

15

16  Hon. Mitchell D. Dembin
    United States Magistrate Judge

17

18

19

20

21

22

23

24

25

26